**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LESLIE TACKETT,

      Petitioner,

v.                                                                          Case No. 2:11-cv-11508

PAUL KLEE,

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND GRANTING CERTIFICATE OF APPEALABILITY**

      Petitioner Leslie Tackett has filed a *pro se* petition for a writ of habeas corpus,

seeking relief from his conviction for carjacking.  Though Petitioner pleaded guilty to the

crime in Michigan circuit court, he now alleges that his plea was involuntary because he

received constitutionally ineffective assistance of counsel during the plea process.

Because the Michigan courts did not unreasonably apply relevant Supreme Court

precedent in rejecting Petitioner's ineffective-assistance-of-counsel claim, the court will

deny the petition.

**I.  BACKGROUND**

      On October 15, 2009, Petitioner pleaded guilty in Wayne County Circuit Court to

one count of carjacking in violation of Michigan Compiled Laws section 750.529A.

According to the investigation report prepared by police, the facts giving rise to

Petitioner's conviction are as follows:

> On July 12, 2005, at approximately 1:48 p.m., Ronald Adams went to 12153
> McDougall, Hamtramck, Michigan to confront the defendant, Leslie Tackett,
> about items that were stolen from him in a B&E which occurred in Detroit,
> Michigan.  When Adams attempted to question the defendant about the
> stolen items, the defendant pulled a knife on Adams and told him that he was

"going to cut him."  The defendant then ran south on McDougall and jumped into the back seat of a 2000 Pontiac Grand AM [sic] which was located in front of 12061 McDougall, Hamtramck, Michigan.  The defendant put the knife to Katarzyna Wronikowska's neck and told her to drive.  She jumped out of the vehicle and ran.  The defendant took off in the car.  Officers Donell and Zelonck obtained a picture from Sikora Scrap Metal where the defendant had sold a ladder from the B&E.  Officer Betleja responded to the Sunoco Gas Station located at Davison and Conant where the victims recovered the Grand Am.

(Presentence Investigation Report 3-4, Dkt. # 11 (quoting Hamtramck Police

Department Investigator's Report, July 12, 2005).)

Petitioner, however, has a different story regarding the events surrounding his

offense.  According to the affidavit he submitted to the Michigan courts and this court,

quoted verbatim below, Adams assaulted him during their confrontation, precipitating

his flight in Wronikowska's Grand Am:

On 7-12-05 Ronald Adams his brother and three other men from a known gang family in and around the Detroit area came to 12153 McDougall, MI. My brother James Tackett, Monica Brown and I was at the house for the purpose of remodeling the house.  These five men approached the three of us in the backyard of the above address.  They wanted to know about some items that were stole out of one of their garages.  I did not have nor did I steal these items.  Ronald Adams assaulted me hitting me in the face with his fist. I took off running and pulled my knife as I began to run south on McDougal street.  Ronald Adams and his brother chased me on foot while the other three men got into a black suburban and started to chase me south on McDougal street which is the wrong way on the one way street.  As I ran with the knife in my hand I was getting pretty winded.  I was scared for my life and safety and did not know what to do or where to go as they were pretty close to catching me.  There was an older lady standing on the front porch of a house and a car parked in front of it with a young lady in the black car.  I ran to the car and tried the back door on the driver's side of the car and it was open, I jumped into the car and said there is people chasing me and asked if she would drive me up out there.  She screamed and jumped out of the car. The car was already running so I reached up and pulled the gear selector into drive and steered the car out of the parking slot.  Then I was able to get in the front seat and drive it, but while I was doing so the guys were trying to get in the door of the car.  I steered around the on coming black suburban and fled from the area.  I went 6-8 city blocks to safety and left the car on

Davison and Conat streets at the corner gas station.  I left the car locked and in the air pump zone so the manager would call and have it towed away.

(Pet.'s Aff. ¶ 1, Dkt. # 13, at 12-13.)

Nevertheless, Petitioner entered a plea bargain whereby he agreed to plead guilty to one count of carjacking in exchange for the prosecutor's dismissal of charges of felonious assault and fourth habitual offender status.  In the course of entering his guilty plea, Petitioner confirmed that he had entered Wronikowska's car with a knife in his hand, asked her to drive, and, when she fled, drove the car away himself.  At the same time, he reiterated that he had been chased to the car and insisted that he had not intended to harm to Wronikowska:

> [DEFENSE COUNSEL]:  Back on July 12th, 2005, were you in front of 12061 McDougall in the City of Hamtramczyk [sic]?
>
> THE DEFEDANT [sic]:  Yes, I was.
>
> [DEFENSE COUNSEL]:  Did you take a 2000 Pontiac Gran [sic] Am?
>
> THE DEFENDANT:  Yes, I did.
>
> [DEFENSE COUNSEL]:  When you took that, did you have a knife to the neck of Miss Wronikowska?
>
> THE DEFENDANT:  No, I didn't put no knife to her throat.  But I had a knife in my hand.  People were chasing me and I had the knife for that reason.  But I didn't put it to her throat.  No.
>
> [DEFENSE COUNSEL]:  You ran to her car, correct?
>
> THE DEFENDANT:  Yes, I did.
>
> [DEFENSE COUNSEL]:  Without her permission?
>
> THE DEFENDANT:  Right.
>
> [DEFENSE COUNSEL]:  And you had a knife, correct?
>
> THE DEFENDANT:  Right.

3

[DEFENSE COUNSEL]:  And you told her to drive?

THE DEFENDANT:  I asked her to ride me up out of there, yes.

[DEFENSE COUNSEL]:  You demanded that she drive away, correct?

THE DEFENDANT:  Well I asked her to drive me up out of there.  But, yes.  She was scared and jumped out.

THE COURT:  Mr. Tackett . . . did you have a knife that you threatened this woman with when you got in her car?

THE DEFENDANT:  I didn't threaten her with the knife, no.

THE COURT:  So you didn't put her in fear of her safety with a knife?

THE DEFENDANT:  Well she probably seen the knife.  But I was, I had the knife cause [sic] I was running from the individuals that were chasing me.  So therefore, probably she thought I was there, you know, seize her car with that knife probably.  You know?  So I can understand why she would say yeah, carjacking.

THE COURT:  Did you use force or violence against her when you got in her car?

THE DEFENDANT:  No, I didn't.

THE COURT:  All right.  We can't accept your plea Mr. Tackett.  You can't establish the elements, make a factual basis to support your plea.  If you didn't do the things that are alleged that you did in terms of making her, putting her in fear with the weapon—

THE DEFENDANT:  I had the knife, Your Honor.  So I can understand that.  I am right-handed.  So I can understand where she would say that she was in fear of her life cause [sic] I had the knife.

THE COURT:  But you are saying you weren't intentionally trying to put her in fear, is that what you are saying?

THE DEFENDANT:  I was trying to get her to drive me up out of there.

THE COURT:  In doing so, did you use a knife to threaten her with, so that she would comply with your demand that she—

THE DEFENDANT:  Well, I had the knife in my hand.

4

THE COURT: Well I'm not asking that. Did you intend to threaten her with that knife so that she would drive that vehicle, so that you would get out of there?

THE DEFENDANT: Yes.

(Plea Hr'g Tr. 11-13, Oct. 15, 2009, Dkt. # 9-2.)

The court accepted Petitioner's guilty plea, but, up until his sentencing, he continued to protest the characterization of his conduct towards Wronikowska as intentionally threatening. In his presentence interview, Petitioner commented that "[t]he charge I was charged with I didn't do, but I am copping to it." (Presentence Investigation Report 4.) At the sentencing hearing, defense counsel explained this statement as follows:

My client indicated to me, both at the time of the plea and this morning, that while he believes he was running after the altercation with the alleged other victim [Adams] he did have a knife in his hand when he jumped into the victim's car. And he did take her car without her permission.

His concern is that he does not feel that he ever wanted to actually hurt her with the knife. Hence that was the basis for the statement to the probation department. He is fully aware that he had a weapon.

(Sentencing Hr'g Tr. 3-4, Nov. 2, 2009, Dkt. # 9-3.) The court proceeded to sentence Petitioner to eight-to-twenty years imprisonment.

Although Petitioner waived his right to an automatic direct appeal, he submitted a delayed application for leave to appeal to the Michigan Court of Appeals on July 16, 2010, arguing that his counsel was constitutionally ineffective for failing to advise him that he could have raised the affirmative defense of duress to the carjacking charge. The court of appeals rejected his application in a summary order, stating that "the delayed application for leave to appeal is DENIED for lack of merit in the grounds presented." *People v. Tackett*, No. 299119 (Mich. Ct. App. Aug. 30, 2010), Dkt. # 9-6,

5

at 1.  Petitioner then filed an application for leave to appeal in the Michigan Supreme

Court, where it was also denied "because [the Justices were] not persuaded that the

question presented should be reviewed by th[e] Court."  *People v. Tackett*, No. 141901

(Mich. Feb. 7, 2011), Dkt. # 9-7, at 1.  On April 8, 2011, Petitioner filed the instant

petition for a writ of habeas corpus on the single ground that his "Sixth Amendment right

to effective assistance of counsel was denied when his trial counsel failed to advise him

of the meritorious defense of duress and thereby rendered his guilty plea involuntary

and not understandingly made."  (Pet. 3, Dkt. # 1.)

## II.  STANDARD

The court evaluates Petitioner's claim under the "difficult to meet," *Harrington v.

Richter*, 131 S. Ct. 770, 786 (2011), "highly deferential," *Woodford v. Visciotti*, 537 U.S.

19, 24 (2002) (internal quotation marks omitted), standard of 28 U.S.C. § 2254(d).  *See

Harrington*, 131 S. Ct. at 783-85 (holding that claims rejected by state courts in

summary dispositions are presumed "adjudicated on the merits" within the meaning of

§ 2254(d)); *Hardaway v. Robinson*, 655 F.3d 445, 447, 449 n.1 (6th Cir. 2011) (relying

on *Harrington* in stating that § 2254(d) applies when "[t]he Michigan Court of Appeals

upheld the district court's ruling in an order stating, 'the delayed application for leave to

appeal is denied, for lack of merit in the grounds presented'" and "[t]he Michigan

Supreme Court, also in a one-sentence order, declined review").  Petitioner's application

for habeas relief will not be granted unless the Michigan courts' adjudication of the

claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or

6

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable application of clearly established federal law occurs when a state-court decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," *id.* at 411; rather, that application must be "objectively unreasonable," *id.* at 409. In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

For the purposes of a § 2254(d) inquiry, clearly established federal law is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Furthermore, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

7

### III.  DISCUSSION

Petitioner asserts that his Sixth Amendment rights were violated when his attorney failed to inform him that he could bring a duress defense against the carjacking charge, thereby rendering his guilty plea involuntary and unknowing.  The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's claim by denying him leave to appeal, and Respondent concedes the claim has been properly exhausted in the state courts.  (Resp. 4, Dkt. # 8); *see D'Ambrosio v. Bagley*, 527 F.3d 489, 495-97 (6th Cir. 2008) (discussing how state "expressly waives" § 2254's exhaustion requirement).  The Michigan court decisions denying Petitioner relief do not contravene clearly established Supreme Court precedent concerning ineffective assistance of counsel in the context of guilty pleas, so the court will deny his petition for a writ of habeas corpus.

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1989) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  The familiar, two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), dictates whether a defendant received constitutionally ineffective assistance during the plea process.  *Hill*, 474 U.S. at 57. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 446 U.S. at 687-88.  This objective standard is "highly deferential" to defense counsel, *id.* at 688, especially when a court reviews "the choices an attorney made at the plea bargain stage," *Premo v. Moore*, 131 S. Ct. 733,

8

741 (2011).  Second, the defendant must demonstrate that he was prejudiced by his counsel's deficient performance.  *Strickland*, 446 U.S. at 692.  When a defendant claims ineffective assistance during the plea process, he establishes prejudice by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.  "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."  *Id.*

Under Michigan law, a defendant successfully raises a defense of duress by presenting evidence from which a jury could conclude:

> (1) there was threatening conduct sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm, (2) the conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant, (3) the fear or duress was operating upon the mind of the defendant at the time of the alleged act, and (4) the defendant committed the act to avoid the threatened harm.

*People v. Terry*, 569 N.W.2d 641, 645 (Mich. Ct. App. 1997) (citing *People v. Luther*, 232 N.W.2d 184, 187 (Mich. 1975)).  Throughout the state court proceedings, and again in this court, Petitioner consistently espoused a story that may support a duress defense to his admitted crime of carjacking.  He alleges that he was physically assaulted by Adams, a gang member, and, when he fled on foot from the encounter, Adams and other gang members aggressively pursued him in a vehicle; this may constitute threatening conduct that both would create a reasonable fear of death or serious bodily harm and did in fact cause such a fear in the mind of Petitioner.  Petitioner also asserts that he entered and ultimately drove off in Wronikowska's car only to escape his pursuers, which perhaps indicates that he was operating under fear or duress when

9

committing the crime and that he committed the crime only to avoid harm at the hands of the gang members. Moreover, the transcripts of Petitioner's plea hearing and sentencing support his claim that he may have opted to pursue a duress defense at trial in lieu of entering a guilty plea. Both transcripts suggest that, in Petitioner's mind, his crime was justified and he had discussed this belief with his attorney on at least two occasions. Under these circumstances, it may have been objectively unreasonable if defense counsel neglected to advise Petitioner that he could potentially raise a duress defense at trial, if, in fact, his story were true. *See United States v. Mooney*, 497 F.3d 397 (4th Cir. 2007) (finding ineffective assistance of counsel when defense attorney failed to inform defendant that he had meritorious justification defense to charge of unlawful possession of a firearm).

However, Petitioner's version of events was disputed. The police investigation of Petitioner's crime suggested that Petitioner had broken into Adams's home and stolen some items, pulled a knife when Adams attempted to confront him about the break in, held the knife to Wronikowska's throat to get her to drive him away from the scene, and finally drove off in her car when she ran away in fear of her life. Under these facts, Petitioner clearly would not qualify for a duress defense, and Petitioner's attorney would not be deficient by failing to discuss duress with Petitioner. Additionally, and regardless of whether defense counsel's conduct fell below an objective standard of reasonableness, this conflicting account of Petitioner's crime casts doubt on whether a duress defense would succeed at trial. Aside from the possibility that a factfinder might decide that Petitioner's account of the events surrounding his crime are untrue, raising a duress defense would most likely necessitate testimony from Petitioner, which would in

10

turn open the door to the state's introduction of evidence that he had committed assaultive crimes in the past.  (*See* Presentence Investigation Report 1.)  In light of these factors, it is doubtful that Petitioner would have opted to go to trial on the carjacking charge, especially because, without the benefit of his plea bargain, he would have risked life imprisonment and conviction of felonious assault and as a fourth habitual offender.  (*See* Plea Hr'g Tr. 10.)  Petitioner has not shown that the Michigan courts unreasonably applied the Supreme Court's ineffective-assistance-of-counsel jurisprudence in concluding that Petitioner did not receive constitutionally deficient representation.  Therefore, Petitioner's guilty plea is not invalid, and the court will not issue a writ of habeas corpus.

### IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal from this opinion and order may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.  Fed. R. App. P. 22(b)(1).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  R. Gov. § 2254 Cases 11(a).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the court concludes that reasonable jurists could debate the court's conclusion that the petition

11

fails to state a claim upon which habeas corpus relief should be granted, given

Petitioner's repeated assertions in state court that he had only committed the crime to

aid in his flight from alleged assailants.  Therefore, the court will grant a certificate of

appealability.

### V.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the petition for writ of habeas

corpus [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED.


  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 23, 2011


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, December 23, 2011, by electronic and/or ordinary mail.

  s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522